UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LARRY GOLDSTEIN and JANET K. GOLDSTEIN, | |
| Plaintiffs, | 02:07-CV-00387-LRH-VPC |
| v. | ORDER |
| TURNBERRY PAVILION PARTNERS LIMITED PARTNERSHIP, a Delaware Limited partnership; and DOES 1 through 5, | |
| Defendant. | |

Presently before the court is a Motion to Dismiss Complaint or in the Alternative Motion for Summary Judgment (# 10) filed by defendant, Turnberry Pavilion Partners Limited Partnership ("Turnberry"). Plaintiffs, Larry Goldstein and Janet K. Goldstein, have filed an opposition (# 13), and Turnberry replied (# 19).

**I. Factual Background**[1]

This is a diversity action arising out of a contract to purchase a luxury condominium.

---

[1] The parties' points and authorities contain several factual contentions without specific citation to the record. The court admonishes council that factual contentions in a motion for summary judgment must be supported by admissible evidence and specific citation to that evidence. Local Rule 56-1 states, "[m]otions for summary judgment and responses thereto shall include a concise statement setting forth each fact material to the disposition of the motion which the party claims is or is not genuinely in issue, *citing the particular portions of any pleading, affidavit, deposition, interrogatory, answer, admission, or other evidence upon which the party relies.*" LR 56-1.

"Turnberry builds and sells luxury condominiums at the location known as Turnberry Place at 2777 Paradise Road, Las Vegas[,] Nevada 89109." (Aff. of John Riordan (# 11) ¶ 2.)  In January, 2004, Plaintiffs agreed to purchase a condominium, unit 2703, in Turnberry Place and placed a deposit. *Id.* ¶ 5.

Plaintiffs were later informed by Jena McIntosh ("McIntosh"), regional sales manager of Turnberry Place, that a penthouse unit, unit 3703, was available at a purchase price of $5,000,000. (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 10.)  Plaintiffs responded by indicating they did not have cash available to purchase the unit with only seventy percent financing.[2]  *Id.* ¶ 11.  McIntosh responded by indicating that she had a lender who could loan Plaintiffs eighty percent of the purchase price.  *Id.* ¶ 12.

A meeting was arranged with a mortgage loan consultant and Plaintiffs obtained preapproval for a loan to fund eighty percent of the purchase price.  *Id* ¶¶ 13-15. As a result, the parties cancelled the first agreement in order to enter into a separate agreement for unit 3703.  (Aff. of John Riordan (# 11) ¶ 5.)

On May 11, 2006, Plaintiffs entered into a purchase and sale agreement with Turnberry to purchase unit 3703 in tower four of Turnberry Place.  *Id.* ¶ 3.  The purchase price of unit 3703 was $5,000,000 with a deposit of $500,000 due upon signing.  *Id.* at 4.  The remainder of the purchase price was due at closing.  (Def.'s Mot. to Dismiss (#10), Purchase and Sale Agreement, Ex. 1 ¶ 6.)

After "a period of time," Plaintiffs learned that their mortgage loan consultant had left his employer and that he was not authorized to issue an eighty-percent loan commitment.  (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 18.)   Plaintiffs further learned that neither their mortgage loan consultant nor the company he worked for were licensed in Nevada.  *Id*. Plaintiffs were not able to locate a new lender until February, 2007.  *Id.* ¶ 23.

---

[2]It appears that the maximum loan to value that a lender will provide for the type of mortgage at issue in this case is seventy percent.   (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 7.)

2

Pursuant to the Purchase and Sale Agreement, the closing date was to be set by Turnberry. (Def.'s Mot. to Dismiss (#10), Purchase and Sale Agreement, Ex. 1 ¶ 9.)  Closing was to occur upon completion of the unit which occurs with the issuance of a certificate of occupancy for the condominium. *Id*. ¶ 8.5.  In the event of a default by the buyer, the agreement allows Turnberry to terminate the agreement and retain the deposit as liquidated damages. *Id*. ¶ 15.1.

In a letter dated August 9, 2006, Turnberry set the closing date as November 28, 2006. (Aff. of John Riordan (#11), August 9, 2006, Letter, Ex. C.)  It is undisputed that Plaintiffs failed to pay the balance of the condominium and sign the closing documents at the time of closing.  As a result, Turnberry established a new closing date of January 26, 2007. (Aff. of John Riordan (# 11), January 17, 2007, Letter, Ex. D.)

Plaintiffs failed to appear at the January 26, 2007, closing date. (Aff. of John Riordan (# 11), January 29, 2007, Letter, Ex. E.)  In a January 29, 2007, Letter, Turnberry notified Plaintiffs of the default and, pursuant to the Purchase and Sale Agreement, gave Plaintiffs twenty days to correct the default and close on the condominium. *Id*.

Plaintiffs responded to this letter, through counsel, on February 1, 2007. (Aff. of John Riordan (# 11), February 1, 2007, Letter, Ex. F.)  In that letter, Plaintiffs purported to reject the notice of default stating that the condominium was not in a condition to close and that Plaintiffs had difficulty closing as a result of false and misleading information given to them by a Turnberry sales representative. *Id*.

On March 6, 2007, Turnberry contacted plaintiff Larry Goldstein to make him aware of the default. (Aff. of John Riordan (# 11) ¶ 12.)  There is a dispute as to what occurred during this conversation.  According to Turnberry, it gave Plaintiffs until March 9, 2007, to pay the balance and close. *Id*.  Plaintiffs, on the other hand, contend that Larry Goldstein made arrangements with John Riordan of Turnberry to execute escrow documents on March 9, 2007, and fund the purchase of the property the following week. (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry

Goldstein ¶ 27.)

Plaintiffs contend that they received a phone call on March 9, 2007, from Pam Pattie of Turnberry's main office in Florida. *Id*. ¶ 28. Pam Pattie allegedly told Plaintiffs that if they could not fully fund the purchase price by the close of business March 9, 2007, to not show up because Turnberry was cancelling the transaction. *Id*. Plaintiffs did not appear for closing. *Id*. ¶ 31.

On March 9, 2007, Turnberry sent Plaintiffs a letter notifying them of the default and indicating that Turnberry had terminated the Agreement, placed the unit back on the market and retained the $500,000 deposit. (Aff. of John Riordan (# 11), March 9, 2007, Letter, Ex. G.) Also on March 9, 2007, Plaintiffs sent a letter to Turnberry. (Aff. of John Riordan (# 11), March 9, 2007, Letter, Ex. G.) This letter indicated that the property was in a condition sufficient for closing and that the Plaintiffs were liquidating various securities to contribute to their portion of the purchase price. *Id*. However, Plaintiffs stated that they were unwilling to liquidate their personal holdings until they had written confirmation that Turnberry would not refuse to close on the property. *Id*.

In a letter dated March 12, 2007, Turnberry agreed to close escrow on or before March 14, 2007, and agreed to extend the date for funding to March 21, 2007. (Aff. of John Riordan (# 11), March 12, 2007, Letter, Ex. I.)

Plaintiffs sent a letter dated March 12, 2007, to Turnberry indicating that their loan had expired and that it would take time to reapply for the loan. (Aff. of John Riordan (# 11), March 12, 2007, Letter, Ex. I.) Plaintiffs further informed Turnberry that they would be initiating legal action. *Id*. Plaintiffs rejected the March 14, 2007, closing date on account of their loan expiring. (Aff. of John Riordan (# 11), March 12, 2007, Letter, Ex. K.)

Plaintiffs filed this action in state court on March 15, 2007, bringing the following claims for relief: breach of contract, specific performance, intentional misrepresentation, negligent misrepresentation, and rescission. The action was removed to this court on March 26, 2007, on the

4

basis of diversity jurisdiction.

**II.  Legal Standard**

As both parties have presented evidence outside the pleadings, the present motion is more appropriately treated as one for summary judgment.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).  For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the nonmoving party's case."  *Catrett,* 477 U.S. at 325.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary

1  judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute
2  regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could
3  return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a
4  scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine
5  dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at
6  252.

7  **III. Discussion**

8        Turnberry is seeking summary judgment on each of Plaintiffs' causes of action.  The court
9  will address each of Plaintiffs' causes of action and the parties' arguments below.

10       **A. Breach of Contract**

11       Turnberry argues that Plaintiffs' breach of contract claim fails because Plaintiffs actually
12 breached the contract and failed to perform their obligation to close.  Plaintiffs oppose the motion
13 arguing that the doctrine of contract abandonment comes into play.  Specifically, Plaintiffs argue
14 that Turnberry breached the contract by demanding funding on or before March 9, 2007, and then
15 cancelling the contract on March 9, 2007.

16       As an initial matter, the doctrine of contact abandonment is inapplicable to the case at bar.
17 "Generally, contract abandonment occurs when both parties depart from the terms of the contract
18 by mutual consent." *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1019
19 (Nev. 2004).  "[P]arties to a contract may possibly agree to changes from the original agreement
20 which are so extensive that the contract must be deemed abandoned as a matter of law." *Modern*
21 *Builders, Inc. of Tacoma v. Manke*, 615 P.2d 1332, 1337 (Wash. 1980) (citing *V.C. Edwards*
22 *Contracting Co. v. Port of Tacoma*, 514 P.2d 1381 (Wash. 1973)).

23       Here, Plaintiffs appear to argue that the contract was abandoned when the parties agreed to
24 change the closing date.  Nevertheless, the Purchase and Sale Agreement specifically contemplated
25 changes in the closing date. (Def.'s Mot. to Dismiss (#10), Purchase and Sale Agreement, Ex. 1 ¶

26       6

9.) The Purchase and Sale Agreement reads, in pertinent part:

> In the event Buyer requests an extension of the Closing Date, no such extension shall be effective unless given in writing by Seller.  The Closing Date shall be the date utilized for calculation of all prorations and adjustments required by this Agreement.  Notwithstanding the foregoing, Seller may and is authorized to postpone the Closing for any reason and Buyer agrees to close on the date Seller specifies in its notice of postponement.  A change of time or place of Closing only (one not involving a change of date) shall not require any additional notice period.  Any notice of Closing, postponement or rescheduling requested or desired by Seller may be given orally, by telephone, telegraph, facsimile, mail or other means of communication at Seller's option.

*Id*.  Because the contract specifically contemplated a change in the closing date, there is no evidence of contract abandonment.

Although the doctrine of contract abandonment is inapplicable, looking at the evidence in the light most favorable to Plaintiffs, there is a genuine issue of material fact concerning the closing date.  On August 9, 2006, Turnberry sent a letter to Plaintiffs informing them that the Certificate of Occupancy would be received on September 8, 2006, and that closing would occur on November 28, 2006.  (Aff. of John Riordan (#11), August 9, 2006, Letter, Ex. C.)  However, when Plaintiffs failed to close, Turnberry established a new closing date of January 26, 2007.  (Aff. of John Riordan (# 11), January 17, 2007, Letter, Ex. D.)  After notifying Plaintiffs of their default with respect to the January 26, 2007, closing date, Turnberry ultimately extended the closing date a second time.

However, there is an issue of fact as to this extension.  According to Turnberry, it gave Plaintiffs until March 9, 2007, to pay the balance and close.  (Aff. of John Riordan (# 11) ¶ 12.) Plaintiffs, on the other hand, contend that the agreement was to execute escrow documents on March 9, 2007, and fund the purchase of the property the following week.  (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 27.)  The Purchase and Sale Agreement permits Turnberry to postpone the closing "for any reason" and that notice may be given orally by telephone. (Def.'s Mot. to Dismiss (#10), Purchase and Sale Agreement, Ex. 1 ¶ 9.)  Here, there is

conflicting evidence as to when closing was scheduled to occur.

Although not addressed by the parties, looking at Plaintiffs' version of the facts in the light most favorable to Plaintiffs, Turnberry's conduct of telling Plaintiffs that they must fully fund the purchase price of the unit by the close of business March 9, 2007, or Turnberry would cancel the transaction could constitute a repudiation. "It has long been accepted that an anticipatory repudiation discharges any remaining duties of performance of the injured party." 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.20 (3d ed. 2004). Thus, there are genuine issues of material fact precluding summary judgment with respect to Plaintiffs' claim for breach of contract.

**B. Specific Performance**

Turnberry argues that specific performance is unavailable because Plaintiffs have not tendered performance. Plaintiffs, on the other hand, argue that specific performance is available because Turnberry repudiated the agreement and Plaintiffs were ready, willing, and able to perform.

Specific performance is a remedy available after there has been a breach of contract by either nonperformance or repudiation. 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.20 (3d ed. 2004). "Specific performance is available only when: (1) the terms of the contract are definite and certain; (2) the remedy at law is inadequate; (3) the appellant has tendered performance; and (4) the court is willing to order it." *Serpa v. Darling*, 810 P.2d 778, 782 (Nev. 1991) (citing *Carcione v. Clark*, 618 P.2d 346 (1980). "To be awarded specific performance, a purchaser who has not tendered the purchase price must demonstrate that she is ready, willing, and able to perform." *Id*. (citing *Cohen v. Rasner*, 624 P.2d 1006 (Nev. 1981)).

The court finds that there are genuine issues of material fact that preclude summary judgment with respect to Plaintiffs' claim for specific performance. There are genuine issues of material fact related to whether Turnberry repudiated the contract. However, Plaintiffs have indicated that they are "ready, willing and able to perform the purchase of the property, and as soon as the loan documents can be redrawn, [Plaintiffs] will be prepared to close escrow." (Opp'n to

Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 10.)  For these reasons, summary judgment is inappropriate.

**C.  Intentional and Negligent Misrepresentation**

Plaintiffs argue that Turnberry made misrepresentations to Plaintiffs that Turnberry had a lender who would qualify Plaintiffs for an eighty percent mortgage.  Turnberry disputes the claim arguing that a referral to a lender is not a material misrepresentation.

A claim for intentional misrepresentation involves the following elements: (1) a false representation made by the defendant; (2) knowledge or belief on the part of the defendant that the representation is false; (3) an intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) justifiable reliance upon the representation on the part of the plaintiff in taking action or refraining from it; and (5) damage to the plaintiff.  *See Lubbe v. Barba*, 540 P.2d 115, 117 (Nev. 1095).  Negligent misrepresentation involves the same elements except that the tortfeasor does not need to have actual knowledge of the falsity of the statement so long as the tortfeasor has no reasonable belief in the misstatement's truth.  *See Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1986).

Here, there is no evidence that Turnberry made a false representation.  Furthermore, there is no evidence that Turnberry knew that any representation it made was false or that Turnberry had no reasonable belief in the alleged misstatement's truth.  Finally, there is no evidence that Plaintiffs justifiably relied on this alleged misrepresentation.

The alleged misrepresentation in this case occurred when McIntosh told Plaintiffs that "she had a lender, who she would highly recommend, who could loan [Plaintiffs] 80% of the purchase price ($4,000,000). . . ." (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 12.) McIntosh disputes highly recommending any particular lender and states that she provided Plaintiffs with the names of approximately eight potential lenders. (Reply Brief in Support of Mot. to Dismiss (# 19), Aff. of Jenna McIntosh ¶ 3.)

1   Nevertheless, the evidence shows that Plaintiffs met with a mortgage loan consultant and
2 obtained preapproval for an eighty percent loan on the unit. (Opp'n to Def.'s Mot. to Dismiss (#
3 13), Aff. of Larry Goldstein ¶ 12.) The fact that the mortgage loan consultant left the company he
4 worked for and was not authorized to issue an eighty percent loan commitment does not
5 demonstrate that Turnberry made a misrepresentation in telling Plaintiffs that it had a lender who
6 could lend eighty percent of the purchase price. Although the record is silent on the issue, it is
7 certainly possible that the mortgage loan consultant in this case had previously lent out eighty
8 percent of the purchase price to purchasers of condominiums.

9   Even if McIntosh's statement constitutes a false representation, there is no evidence that
10 Turnberry knew the representation was false or had no reasonable belief in the statement's truth. In
11 their points and authorities, Plaintiffs merely state, "[c]learly, Turnberry knew or should have
12 known about this lender's lack of qualification." (Opp'n to Def.'s Mot. to Dismiss (# 13) at 11.)
13 Such conclusory statements unsupported by citation to any evidence is insufficient to create a
14 genuine issue of material fact.

15   Finally, Plaintiffs argue that "[i]t is clear that the Goldsteins would not have entered into the
16 contract but for the misrepresentation made by Turnberry's personnel." (Opp'n to Def.'s Mot. to
17 Dismiss (# 13) at 11.) The evidence shows otherwise. According to the affidavit of Larry
18 Goldstein, Mr. Goldstein was skeptical of the lender's ability to loan eighty percent of the purchase
19 price and did not sign the contract until he received loan approval. (Opp'n to Def.'s Mot. to
20 Dismiss (# 13), Aff. of Larry Goldstein ¶¶ 14-16.) Thus, by Plaintiffs' own admission, they relied
21 on the loan preapproval rather than the statements of McIntosh. For these reasons, summary
22 judgment will be granted on Plaintiffs' causes of action based on misrepresentation.

23   **D. Rescission**

24   Plaintiffs are seeking rescission of the contract arguing that there was a mutual mistake of
25 the parties, or, alternatively, a unilateral mistake. Finally, Plaintiffs argue that rescission may be

26

required pursuant to the Interstate Land Sales Full Disclosure Act ("the Land Sales Act"), 15 U.S.C. § 1701 et seq., because Plaintiffs did not prepare a property report. Turnberry argues that there was no mistake in this transaction as the parties knew the contract terms for closing. Turnberry further argues that the Land Sales Act does not apply because the transaction did not involve interstate commerce. "'Mutual mistake occurs when both parties, at the time of contracting, share a misconception about a vital fact upon which they based their bargain.'" *Gramanz v. Gramanz*, 930 P.2d 753, 758 (Nev. 1997) (quoting *General Motors v. Jackson*, 900 P.2d 345, 349 (Nev. 1995)). "'[A] mutual mistake is a basis for an equitable rescission of a contract.'" *Id*. (quoting *Tarrant v. Monson*, 619 P.2d 1210, 1211 (Nev. 1980)). "Likewise, a unilateral mistake can be the basis for a rescission if 'the other party had reason to know of the mistake or his fault caused the mistake.'" *Oh v. Wilson*, 910 P.2d 276, 278 (Nev. 1996) (quoting *Home Savers v. United Sec., Co.*, 741 P.2d 1355, 1356-57 (Nev. 1987)).

Plaintiffs argue that "the parties were either operating under the mutual mistake and belief that the Goldsteins could acquire 80% mortgage financing for the penthouse unit, or the Goldsteins made a unilateral mistake in that regard based specifically on the recommendation of Turnberry's employee, Jena McIntosh." (Opp'n to Def.'s Mot. to Dismiss (# 13) at 12.) The court disagrees. The contract entered into by the parties clearly and explicitly states,

> Buyer understands that Buyer will be obligated to pay all cash at Closing under this Agreement, and that Buyer's obligations under this Agreement to purchase the Unit will not depend on Buyer obtaining a loan secured by deed of trust from any lender or any conditions imposed by such lender. Buyer will be solely responsible for making Buyer's own financial arrangements to enable Buyer to pay Seller for the Unit.

(Def.'s Mot. to Dismiss (#10), Purchase and Sale Agreement, Ex. 1 ¶ 6.) Thus, Plaintiffs explicitly agreed that their obligations under the contract would not depend on their ability to obtain a loan.

Furthermore, the affidavit of Larry Goldstein indicates that Plaintiffs ultimately were able to obtain a loan in February of 2007. (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein

11

¶¶ 23.) Unfortunately, the parties were still unable to close the transaction. Regardless, the evidence indicates that there was no mutual or unilateral mistake that would warrant recision.

With respect to Plaintiffs' arguments relating to the Land Sales Act, the Land Sales Act provides,

> It shall be unlawful for any developer or agent, directly or indirectly, to make use of any instruments of transportation or communication in interstate commerce, or of the mails . . . to sell or lease any lot unless a printed property report . . . has been furnished to the purchase or lessee in advance of the signing of any contract or agreement by such purchaser or lessee.

15 U.S.C. § 1793(a)(1)(B).

Here, Turnberry has met its initial burden by pointing out that there is no evidence that the transaction at issue involved any means or instruments of transportation or communication in interstate commerce. *See* (Reply Brief in Support of Mot. to Dismiss (# 19) at 6-7.) Plaintiffs have failed to rebut the motion as they have not pointed to any facts supported by the record which demonstrate a genuine issue of material fact.

Even if Plaintiffs had shown that the Land Sales Act applied to this case, the undisputed evidence shows that Plaintiffs did, in fact, receive a copy of the property report. (Opp'n to Def.'s Mot. to Dismiss (# 13), Purchase Receipt, Ex. 8.) The fact that Larry Goldstein does not recall seeing the property report does not refute the undisputed evidence showing that he signed a document acknowledging receipt of the report. *See* (Opp'n to Def.'s Mot. to Dismiss (# 13), Aff. of Larry Goldstein ¶ 17.) For these reasons, the court finds that there are no genuine issues of material fact, and summary judgment should be issued with respect to Plaintiffs' cause of action for rescission.

///

///

///

///

IT IS THEREFORE ORDERED that Turnberry's Motion to Dismiss Complaint or in the Alternative Motion for Summary Judgment (# 10) is hereby GRANTED in part and DENIED in part as set forth in this order.

IT IS SO ORDERED.

DATED this 9th day of November, 2007.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE